UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SILVER ENTERTAINMENT LLC,

      Petitioner,

    v.

RICHARD S. RABIN,

      Respondent.

ECF CASE

**MEMORANDUM OPINION & ORDER**

10 Civ. 5303 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

    Petitioner Silver Entertainment LLC ("Silver") is a Delaware corporation with interests in the hospitality and gaming industry. Respondent Richard S. Rabin worked as a managing director at Silver from February 14, 2007, until his termination on January 9, 2009. Pursuant to an employment agreement which contained an arbitration clause, Rabin filed a Demand for Arbitration, requesting, inter alia, a ruling that he was entitled to an additional thirteen months of salary, bonus, and benefits.

    On June 1, 2010, the arbitrator – retired U.S. District Judge John Lifland – awarded Rabin a total of $30,295.51 ($29,458.88 in damages and $836.63 in interest). On July 12, 2010, Silver filed a petition to confirm the arbitration award. Rabin, however, has filed a motion to modify the award, contending that the arbitrator erred in interpreting the employment agreement. Rabin asks this Court to, inter alia, increase the award to $349,624.38. For the reasons stated below, Rabin's motion to modify the arbitration award will be denied, and Silver's petition to confirm the arbitration award will be granted.

## BACKGROUND

On February 14, 2007, Silver entered into an employment agreement with Rabin (the "Agreement") appointing him Managing Director of Hospitality and Gaming for the company. (Bloom Decl. ¶ 2; Ex. A (Employment Agreement) ¶ 2(a)(i))  The Agreement's term provision contains an automatic renewal clause, which reads as follows:

> The term of Employee's employment hereunder (the "Term") shall commence as of the Effective Date.  Unless earlier terminated under Section 5 of this Agreement, the Term shall continue until one (1) year from the Effective Date (the "Initial Period").  This Agreement shall automatically renew for successive one (1) year terms (each referred to as the "Extension Period") unless either party notifies the other party that this Agreement shall not renew at least ninety (90) days prior to the expiration of the Initial Period or any Extension Period.

(Bloom Decl., Ex. A (Employment Agreement) ¶ 1)

Paragraph 5(d) of the Agreement provides:

> Employee's employment may be terminated by the Company other than for Permanent Disability or Cause upon written notice to Employee at any time ("Without Cause"). . . .

(Id. ¶ 5(d) (emphasis in original))

Paragraph 6(e) of the Agreement addresses the "Effect of Termination by the Company Without Cause":

> Upon termination of Employee's employment hereunder by the Company Without Cause, Employee shall be entitled to:  (i) a lump sum payment equal to the Employee's Base Salary for the remainder of the current Initial Period or Extension Period, as applicable; (ii) any unpaid portion of any bonuses for prior calendar years; (iii) a pro-rata portion of any bonuses (that Employee otherwise would have been entitled to) for the calendar year in which Employee's termination occurs; (iv) the benefit of any health plan in effect by the Company for the benefit of employees holding similar positions . . . and (vi) accrued and unpaid vacation pay, and unreimbursed expenses. . . .

(Id. at ¶ 6(e) (emphasis in original))

On February 14, 2008, the Agreement automatically renewed for another year pursuant to the automatic renewal clause.  On or about January 9, 2009, Silver terminated

Rabin's employment. (Traflet Decl. ¶ 3) Silver gave no notice of non-renewal under the Agreement, however. (Bloom Decl., Ex. P (Arbitrator's Jun. 1, 2010 Opinion and Award) at 5)

On March 12, 2009, pursuant to an arbitration clause in the Agreement (Bloom Decl., Ex. A (Employment Agreement) ¶ 12(j)), Rabin filed a Demand for Arbitration with the Judicial Arbitration and Mediation Service ("JAMS"). (See Bloom Decl., Ex. I (Demand for Arbitration) at 2, 4) The "overall issue in the dispute [was] whether Richard S. Rabin . . . [was] entitled to any further compensation from [Silver]." (Bloom Decl., Ex. P (Arbitrator's Jun. 1, 2010 Opinion and Award) at 1) To answer that question, the arbitrator was required to resolve a number of ancillary issues, including: (1) what Rabin's salary was under the Agreement; (2) whether the Agreement automatically renewed on February 14, 2009, or whether Silver's January 9, 2009 termination of Rabin's employment precluded renewal; (3) whether the termination of Rabin's employment was "for cause"; and (4) the appropriate amount of damages and interest and other compensation owed to Rabin. (Id. at 1, 3, 4, 13, 14)

On June 1, 2010, the arbitrator issued his Opinion and Award, concluding, inter alia, that: (1) Rabin's annual salary was $250,000 (id. at 5); (2) Silver's January 9, 2009 termination of Rabin's employment precluded automatic renewal of the Agreement (id. 3-5); (3) Silver had not demonstrated that Rabin was terminated "for cause" (id. at 14); and (4) while Paragraph 12(j)(iii) of the Agreement provided that the losing party would reimburse the prevailing party for attorneys' fees and expenses, "no reimbursement [was] warranted," given that neither party could be regarded as having "los[t] the arbitration." (Id.) Because the Agreement had not been automatically renewed, Rabin was entitled to payment only for the days between his termination date (January 9, 2009) and the expiration of the Extension Period (February 13, 2009). This period amounts to 34 days. "34/365ths of $250,000 is $23,287.65."

3

(Id. at 13)  The arbitrator further concluded that Rabin was entitled to a pro-rata portion of his bonus for 2009, "which would be 26.5% of $23,287.65, or $6171.23."  Finally, the arbitrator awarded Rabin interest in the amount of $836.63, based on a 2% interest rate, calculated "in view of money market conditions" during the seventeen-month period between January 2009 and June 2010 – the period that Rabin did not have use of the money awarded.  (Id. at 13-15)

In concluding that the Agreement had not automatically renewed on February 14, 2009, the arbitrator found that "had there been no termination of the agreement during its term, the automatic renewal would have been effective, but the termination provisions trump the automatic renewal provisions, in the sense that the failure of Silver Entertainment to preclude automatic renewal did not preclude it from terminating the agreement."  (Id. at 5)

On June 15, 2010, Rabin filed a Request for Corrections to Award, pursuant to Rule 24(j) of JAMS' Employment Arbitration Rules & Procedures.[1]  (See Bloom Decl., Ex. Q (Request for Corrections) at 1, 11)  In his Request for Corrections, Rabin raised three issues.  Rabin first argued that his right to renewal vested on November 16, 2008 – 90 days before the Agreement's anniversary date of February 14, 2009.  Because Silver had not sent a non-renewal notice to Rabin by November 16, 2008, Rabin contended that he was "entitled to one additional year of salary, bonus and benefits under paragraph 6(e) of the Agreement."  (See id. at 2-3 ("The critical point is whether the automatic renewal clause became effective as of 11/16/08 to lock-in a renewal on the contract's anniversary date, 2/14/09.  If so, [Rabin] is entitled to one additional year of salary, bonus and benefits under paragraph 6(e) of the Agreement.")).

In his Request for Corrections, Rabin also argued that

---

[1] JAMS Rule 24(j) authorizes a claimant to request that "the Arbitrator correct any computational, typographical or other similar error in an Award. . . ."

4

> (1) he was entitled to $700 in business expenses, $705 in moving expenses, and Cobra health insurance coverage at a cost of $1,979.65 per month;
>
> (2) he had prevailed on the central relief sought, should thus be considered the "prevailing party," and was therefore entitled to attorneys' fees; and
>
> (3) he was entitled to 9% interest, rather than the 2% awarded by the arbitrator.

(See id. at 10-11)

On July 5, 2010, the arbitrator denied Rabin's Request for Corrections. (See Bloom Decl., Ex. T (Arbitrator's Jul. 5, 2010 Ruling) at 1, 4) The arbitrator found that Rabin's arguments "do not suggest any 'computational, typographical or other similar error' by the Arbitrator" and thus were improper under JAMS Rule 24(j). (Id. at 1) (quoting JAMS Rule 24(j)) Rabin simply "disagree[d] with the Arbitrator's interpretation of the Employment Agreement's provisions relating to automatic renewal and termination without cause and the decision as to which one controls when they conflict." (Id. at 1) The arbitrator also discussed and distinguished five New York cases cited by Rabin in his Request for Corrections.[2] (Bloom Decl., Ex. T (Arbitrator's Jul. 5, 2010 Ruling) at 2-3)

As to the calculation of damages, the arbitrator concluded that the additional damages "were not proved" and there was thus "no basis for correcting the Award in this respect." (Id. at 3) With respect to Rabin's argument that he was the prevailing party, the arbitrator again noted that Rabin had not alleged a computational, typographical or other similar error, but had simply voiced his disagreement "with the Arbitrator's interpretation of his own

---

[2] In his Request for Corrections, Rabin contended that Rubin v. Schwartz, 160 A.D. 2d 53 (1990); Fisher Bros. Sales v. United Trading, 191 A.D. 2d 310 (1993); Rockland Exposition, Inc. v. Alliance of Automotive Service Providers, 2009 WL 1154094 (S.D.N.Y. 2009); Arnold Weiss Corporation v. Manisha Sportswear, 882 F. Supp. 58 (S.D.N.Y. 1991); and Kupferman v. Congregation Nusach Sford of the Bronx, 39 Misc. 2d 107 (1963), stood for the proposition that that "an automatic renewal clause such as the one contained in Paragraph 1 of this agreement[,] creates a vested right to renewal, so that the act of termination without cause will not serve to 'trump' the renewal." (Bloom Decl., Ex. Q (Request for Corrections) at 3)

Award as to who 'won' or 'lost.' This is not a basis for correcting the Award." (Id.) The arbitrator also concluded that, "[a]s to interest, the Arbitrator's determination to apply JAMS' Rules rather than the New York Statute applicable to court proceedings [was] not a 'computational' matter." (Id.)

On July 12, 2010, Silver petitioned this Court for an order confirming the arbitration award. (See Docket No. 1) On August 23, 2010, Rabin moved to modify the arbitration award, arguing that: (1) the parties had presented no issue to the arbitrator concerning the automatic renewal clause, that the arbitrator had therefore exceeded his authority in resolving a "non-issue" concerning the automatic renewal clause, and that – in any event – the arbitrator's interpretation of that clause was "wrong" (Resp. Br. 4, 10-11); (2) Rabin was the "prevailing party" in the arbitration and was therefore entitled to attorneys' fees and expenses (id. at 16-17); (3) the arbitrator incorrectly used a 2% interest rate instead of the 9% required by N.Y. C.P.L.R. § 5004 (id. at 17-18); and (4) the arbitrator should have awarded damages in the amount of $349,624.38, reflecting Rabin's claim that he was entitled to another year of salary, bonus, and benefits. (Id. at 19-20)

## DISCUSSION

The Federal Arbitration Act provides:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable . . . .

9 U.S.C. § 2.

In order to ensure that the "'twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation' are met, arbitration awards are subject

6

only to 'very limited review.'" Telenor Mobile Commc'ns AS v. Storm LLC, 524 F. Supp. 2d 332, 343 (S.D.N.Y. 2007) (quoting Folkways Music Publishers, Inc. v. Weiss, 989 F.2d 108, 111 (2d Cir. 1993)). "Normally, confirmation of an arbitration award is 'a summary proceeding that merely makes what is already a final arbitration award a judgment of the court,' Florasynth, Inc. v. Pickholz, 750 F.2d 171, 176 (2d Cir. 1984), and the court 'must grant' the award 'unless the award is vacated, modified, or corrected.'" D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006) (quoting 9 U.S.C. § 9).

> An order modifying or correcting the arbitration award may be made:
>
> > (a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.
> >
> > (b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.
> >
> > (c) Where the award is imperfect in matter of form not affecting the merits of the controversy.
>
> The order may modify and correct the award, so as to effect the intent thereof and promote justice between the parties.

9 U.S.C. § 11.[3]

In addition to the express grounds for vacating, modifying, or correcting an award set forth in 9 U.S.C. §§ 10 and 11, the Second Circuit

> has recognized implied grounds for modification or vacatur of an arbitral award where the award is in "manifest disregard" of the terms of the agreement or of the law. See [Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc., 126 F.3d 15, 23 (2d Cir. 1997)]. Such an error "must have been obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator. Moreover, the term 'disregard' implies that the arbitrator appreciates

---

[3] 9 U.S.C. § 10 authorizes a United States court to vacate an award where it was procured by "corruption, fraud, or undue means," where the arbitrators were guilty of certain misconduct, or where the arbitrators "exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10.

the existence of a clearly governing [legal or contractual] principle but decides to ignore or pay no attention to it." Id. at 24 (citing Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker, 808 F.2d 930, 933 (2d Cir. 1986)).

Arbitration Between Millicom Int'l V N.V. v. Motorola, Inc. & Proempres Panama, S.A., No. 01 Civ. 2668, 2002 WL 472042, at *5 (S.D.N.Y. Mar. 28, 2002) (second alteration in original); see also Pike v. Freeman, 266 F.3d 78, 86 (2d Cir. 2001) ("Federal court review of an arbitral judgment is highly deferential; such judgments are to be reversed only where the arbitrators have exceeded their authority or made a finding in manifest disregard of the law." (citing Fahnestock & Co. v. Waltman, 935 F.2d 512, 515 (2d Cir. 1991))); Fairchild Corp. v. Alcoa, Inc., 510 F. Supp. 2d 280, 285 (S.D.N.Y. 2007) ("Arbitrators' awards 'are generally accorded great deference under the FAA,' and judicial review of arbitration rulings is 'narrowly limited.'" (quoting Tempo Shain Corp. v. Bertek, Inc., 120 F.3d 16, 20 (2d Cir. 1997))).

"In order to sustain a finding of manifest disregard of the law," the Second Circuit requires

> "something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand or apply the law. . . . Illustrative of the degree of 'disregard' necessary to support vacatur under this standard is our holding that manifest disregard will be found where an arbitrator understood and correctly stated the law but proceeded to ignore it."

Pike, 266 F.3d at 86 (quoting Fahnestock, 935 F.2d at 516) (citing Folkways Music Publishers, Inc., 989 F.2d at 111-12).

"To modify or vacate an award on this ground, a court must find both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." Telenor Mobile Commc'ns AS, 524 F. Supp. 2d at 345 (citing DiRussa v. Dean Witter Reynolds Inc., 121 F.3d 818, 821 (2d Cir. 1997)). Accordingly, "'[a]s long as the arbitrator is

8

even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.'" Pike, 266 F.3d at 86 (quoting United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 38 (1987)).

I. **RABIN'S APPLICATION TO MODIFY THE ARBITRATION AWARD WILL BE DENIED**

   A. **Automatic Renewal Clause**

   Rabin argues that "the issue of the application of the automatic renewal clause, or its reconciliation with any other clause in the employment agreement[,] was never submitted to the arbitrator for consideration or resolution," and that the "parties in fact were in agreement on the issue." The arbitrator therefore exceeded his authority in resolving a "non-issue" concerning the automatic renewal clause. (Resp. Br. 4, 9-11)  Noting that the Federal Arbitration Act, 9 U.S.C. § 11, allows the district court to modify or correct an award "[w]here the arbitrators have awarded upon a matter not submitted to them," Rabin asks this Court to modify the award to add damages reflecting an additional year of salary, bonus, and benefits. (Id. at 9-11, 15)

   Rabin further contends that – in any event – the arbitrator's interpretation of the automatic renewal clause and termination provisions was "wrong." In connection with this argument, Rabin cites the same five New York cases considered and rejected by the arbitrator. Compare Resp. Br. 11, with Bloom Decl., Ex. Q (Request for Corrections) at 3-5)

   1. **Applicable Law**

   "The scope of an arbitrator's authority is determined by the parties' intent as expressed in the agreement or submissions." Millicom, 2002 WL 472042, at *6 (citing Synergy Gas Co. v. Sasso, 853 F.2d 59, 63-64 (2d Cir. 1988)). "'If it is clear that the arbitrator has exceeded his authority, the award cannot stand.'" InterChem Asia 2000 Pte. Ltd. v. Oceana

9

Petrochemicals AG, 373 F. Supp. 2d 340, 353 (S.D.N.Y. 2005) (quoting Local 1199, Hosp. & Health Care Employees Union v. Brooks Drug Co., 956 F.2d 22, 25 (2d Cir. 1992)).

"While an arbitrator's award must 'draw its essence' from the parties' agreement, and may not simply reflect the arbitrator's 'own brand of justice,'" Millicom, 2002 WL 472042, at *6 (quoting Brooks Drug Co., 956 F.2d at 25), "the effectiveness of arbitration in resolving complicated commercial disputes would be severely undermined if arbitrators were limited to the mechanical application of contested contractual provisions." Id. Accordingly, "[w]here the arbitrator acted within his authority in making an award . . . the 'arbitration award must be upheld when the arbitrator offer[s] even a barely colorable justification for the outcome reached. . . . As long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.'" InterChem Asia, 373 F. Supp. 2d at 353 (quoting 187 Concourse Assocs. v. Fishman, 399 F.3d 524, 526 (2d Cir. 2005)).

"In the absence of any contractual restriction on the arbitrator['s] authority, [a party] must 'overcome a powerful presumption that the arbitral body acted within its powers.'" Millicom, 2002 WL 472042, at *7 (quoting Parsons & Whittemore Overseas Co. v. Societe Generale de L'Industrie du Papier (RAKTA), 508 F.2d 969, 976 (2d Cir. 1974)) (citing Sasso, 853 F.2d at 64).

### 2. Analysis

As an initial matter, it is clear that the parties agreed to submit any disputes arising under the Agreement, including any dispute regarding Rabin's termination, to binding arbitration. Paragraph 12(j) of the Agreement provides:

> The Company and the Employee agree to resolve any claims they may have with each other under the Agreement or that relate to the Employee's employment with the Company or termination thereof . . . through final and binding arbitration. . . .

> This arbitration requirement applies to, among other things, disputes about the
> validity, interpretation, or effect of this Agreement or alleged violations of it. . . .

(Bloom Decl., Ex. A (Employment Agreement) ¶ 12(j))  Accordingly, there is no doubt that the scope of the arbitrator's authority under the Agreement is broad enough to encompass any disputes about Rabin's compensation in the event of a termination of his employment.

It is equally clear that Rabin's arbitration claim implicated application of the automatic renewal clause.  Rabin's Demand for Arbitration claimed that he was due 13 months of "salary, bonus and benefits."  (Id., Ex. I).  In its answer, Silver rejected Rabin's claim, asserting that Rabin "has been paid all money and provided with all benefits he is owed under the Employment Agreement, and he is entitled to no more."  (Id., Ex. J)  Because the arbitrator could not resolve Rabin's demand for an additional thirteen months of salary, bonus, and benefits without interpreting the automatic renewal clause, that issue was squarely before the arbitrator.[4]

Rabin's argument that the arbitrator committed an error of law with respect to his interpretation of the automatic renewal and termination provisions is likewise misplaced.  The arbitrator thoroughly and clearly distinguished the five New York cases that Rabin relied on in his Request for Corrections, and which he cites again in his application to modify.  (See Bloom Decl., Ex. Q (Request for Corrections) at 3-5; Bloom Decl., Ex. T (Arbitrator's Jul. 5, 2010 Ruling) at 2-3)  In particular, the arbitrator noted that none of the cases cited by Rabin involved interplay between a termination provision and an automatic renewal provision.  (Id., Ex. T (Arbitrator's Jul. 5, 2010 Ruling) at 2-3)

---

[4] The issue was also hotly litigated before the arbitrator.  In his Request for Corrections, Rabin devotes eight pages to explaining why the arbitrator's interpretation of the automatic renewal clause and termination provisions is wrong on the merits.  (Bloom Decl., Ex. Q (Request for Corrections) at 2-9)  Notably absent from that argument is any assertion that the arbitrator never should have reached the issue.

11

The relevant provisions in the Agreement support the arbitrator's determination. Paragraph 5(d) of the Agreement provides that Rabin's employment "may be terminated [without cause] by the Company . . . at any time." (Id., Ex. A ¶ 5(d))  Paragraph 6(e) of the Agreement addresses the "Effect of Termination by the Company Without Cause":

> Upon termination of Employee's employment hereunder by the Company Without Cause, Employee shall be entitled to:  (i) a lump sum payment equal to the Employee's Base Salary for the remainder of the current Initial Period or Extension Period, as applicable; (ii) any unpaid portion of any bonuses for prior calendar years; (iii) a pro-rata portion of any bonuses (that Employee otherwise would have been entitled to) for the calendar year in which Employee's termination occurs; (iv) the benefit of any health plan in effect by the Company for the benefit of employees holding similar positions . . . and (vi) accrued and unpaid vacation pay, and unreimbursed expenses. . . .

(Id. at ¶ 6(e)) (emphasis in original)  The arbitrator's decision that these clear termination provisions trump the automatic renewal provision – and that Rabin was therefore not entitled to an additional year of salary, bonus, and benefits – was entirely rational.

In any event, the issue before this Court is not whether the arbitrator correctly interpreted the Agreement, or even whether he properly applied the law.  Instead, the relevant question is whether the arbitrator "exceeded [his] authority or made a finding in manifest disregard of the law."  Pike, 266 F.3d at 86 (citing Fahnestock & Co., 935 F.2d at 515)). Because Rabin has made no showing either that the arbitrator exceeded his authority or that he acted in "manifest disregard" of the law, Rabin's application to modify the arbitration award to add an additional year of salary, bonus, and benefits will be denied.

### B.     **Prevailing Party**

Paragraph 12(j)(iii) of the Agreement provides:

> Except as prohibited by applicable law, the party losing the arbitration shall reimburse the party who prevailed for all attorneys' fees and expenses the prevailing party paid. . . .

(Bloom Decl., Ex. A (Employment Agreement) ¶ 12(j)(iii))  Rabin argues that the arbitrator erred in ruling that Rabin was not the prevailing party.  (Resp. Br. 16)

The arbitrator concluded that there was no prevailing party here, because both sides had lost on certain critical issues.  For example, "Rabin ha[d] been awarded . . . less than 9% of what [he] sought" and also had "not prevailed on the critical issue of automatic extension," while "Silver Entertainment ha[d] not prevailed on the critical issues of Rabin's salary and cause for termination."  (Bloom Decl., Ex. P (Arbitrator's Jun. 1, 2010 Opinion and Award) at 14)  Accordingly, the arbitrator concluded that neither party could be regarded as the prevailing party with respect to the central relief sought.  Based on these findings, it cannot be said that the arbitrator's conclusion was in error, much less that he acted in "manifest disregard" of the law.  Accordingly, Rabin's application to modify the arbitration award to grant him attorneys' fees and expenses as the prevailing party will be denied.

### C. Damages

Rabin contends that he is entitled to $346,576, in large part based on his claim to an additional year of salary, bonus, and benefits.  (Resp. Br. 16)  For the reasons already stated, the arbitration award will not be modified as to this issue.  Rabin also argues, however, that the arbitrator "neglected" to include in his award health insurance expenses totaling $25,735.45, unreimbursed business expenses totaling $1,405, $11,543.11 in payroll taxes paid by Rabin, and $2,071.86 in cell phone charges.  (Id. at 18-20)

The arbitrator did not "neglect" to address these expenses; instead the arbitrator twice concluded that these "damage categories ha[d] [not] been proven."  (Bloom Decl., Ex. P (Arbitrator's Jun. 1, 2010 Opinion and Award) at 14))  After rejecting Rabin's demand for these expenses in his June 1, 2010 Opinion and Award (id.), the arbitrator considered them again in addressing Rabin's Request for Corrections:

13

> [Rabin] asserts three items of damage which were not awarded to him: business expenses, moving expenses and COBRA premiums. As indicated in the Opinion and Award, those items of damage were not proved. They were asserted in Exhibit 65, which was a compilation and summary of Claimant's claims for damages, but they were not the subject of any testimony or documentary evidence which would have enabled the Arbitrator to assess their validity. It was not Respondent's burden to refute those claims under those circumstances. There is no basis for correcting the Award in this respect.

(Bloom Decl., Ex. T (Arbitrator's Jul. 5, 2010 Ruling on Request to Correct Award) at 3)

Rabin does not explain why the arbitrator's decision as to these miscellaneous expenses entitles him to a modification under 9 U.S.C. §§ 10 and 11, or why, in reaching this decision, the arbitrator acted in "manifest disregard" of the law. There was no oversight or miscalculation by the arbitrator with respect to these expenses, and the application for a modification of the award on these grounds will be denied. See Data-Stream AS/RS Techs., LLC v. China Int'l Marine Containers, Ltd., No. 02 Civ. 6530 (JFK), 2003 WL 22519456, at *4 (S.D.N.Y. Nov. 6, 2003) ("[Petitioner] faces a strong presumption that the [arbitral] Award is valid and accurate as drafted. Although [the petitioner] characterizes its application as one to correct an oversight or miscalculation, the reality is that [petitioner] is asking the Court to do much more. [Petitioner] wants the Court to make a finding of fact that it is entitled to $74,749.10 that the arbitrator either felt [Petitioner] was not entitled to or accounted for in calculating set-offs that affected the final value of the Award. [Petitioner] has presented no evidence that . . . the Award contains a mathematical miscalculation . . . . [The arbitrator's] ruling on [petitioner's motion to modify], a motion that was based on the same facts and arguments as the motion to modify presently before the Court, provides strong evidence that [the arbitrator] is not guilty of an oversight or a miscalculation in rendering the Award. Considering as much, as well as the strong presumption in favor of the arbitrator's decision and the absence

of evidence of miscalculation offered by [the petitioner], the Court hereby denies the application to modify the Award.").

### D.      Interest Rate

The Agreement provides that any arbitration between the parties "shall be in accordance with the then-current arbitration rules and procedures for employment disputes governing arbitrations administered by the Judicial Arbitration and Mediation Service ('JAMS')." (Bloom Decl., Ex. A (Employment Agreement), ¶ 12(j)(i))

Rule 24(g) of JAMS' Employment Arbitration Rules & Procedures states that "[t]he Award of the Arbitrator may allocate . . . interest (at such rate and from such date as the Arbitrator may deem appropriate) if provided by the Parties' agreement or allowed by applicable law." (Id., Ex. Z (JAMS Employment Arbitration Rules & Procedures)

The arbitrator awarded Rabin 2% prejudgment interest on the amount of the award:

> JAMS Employment Arbitration Rules permit interest if allowed by applicable law, at the rate and for the period which the Arbitrator deems appropriate. The Arbitrator deems interest to be an appropriate component of the Award, since Rabin has lost the use of the money awarded for 17 months (January 2009-June 2010). 2% is an appropriate rate for loss of use for that period, in view of money market conditions during that period. Rabin is entitled to interest in the amount of $836.63.

(Bloom Decl., Ex. P (Arbitrator's Jun. 1, 2010 Opinion and Award) at 14-15) Rabin contends, however, that the arbitrator should have applied the 9% interest rate set forth in N.Y. C.P.L.R. § 5004. (Resp. Br. 18)

Given the parties' agreement that their disputes would be resolved under JAMS' arbitration rules, and given that those rules grant the arbitrator discretion to determine an appropriate rate of interest (if interest is "allowed by applicable law"), there is no basis for disturbing the arbitrator's award of interest.

15

## II. SILVER'S PETITION TO CONFIRM THE ARBITRATION AWARD WILL BE GRANTED

"'[C]onfirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court.'" Controlotron Corp. v. Siemens Energy & Automation, Inc., No. 09 CV 03112(GBD), 2010 WL 5422520, at *2 (S.D.N.Y. Dec. 23, 2010) (quoting Florasynth, Inc., 750 F.2d at 176).

"Only 'a barely colorable justification for the outcome reached' by the arbitrators is necessary to confirm the award." Gottdiener, 462 F.3d at 110 (quoting Landy Michaels Realty Corp. v. Local 32B-32J, Service Employees Int'l Union, 954 F.2d 794, 797 (2d Cir. 1992)); see also Idea Nuova, Inc. v. GM Licensing Grp., Inc., 617 F.3d at 180 (An "arbitral award is entitled to 'strong deference.'"); Bradley v. Merrill Lynch & Co., 344 F. App'x 689, 690 (2d Cir. 2009) ("Arbitration awards are subject to 'severely limited' review by the courts."); Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC, 497 F.3d 133, 138-39 (2d Cir. 2007) (The Second Circuit "has repeatedly recognized the strong deference appropriately due arbitral awards and the arbitral process, and has limited its review of arbitration awards in obeisance to that process."); Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 388 (2d Cir. 2003) ("It is well established that courts must grant an arbitration panel's decision great deference."). "'It is only when the arbitrator strays from interpretation and application of the agreement and effectively dispense[s] his own brand of industrial justice that his decision may be unenforceable.'" Lavender Int'l S.A. v. Indus. Carriers Inc., No. 09 Civ. 7907(WHP), 2010 WL 286638, at *2 (S.D.N.Y. Jan. 19, 2010) (alterations in original) (quoting Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509 (2001)). Accordingly, the party seeking to avoid confirmation of the award "bears a heavy burden of proof." See Data-Stream AS/RS Techs., LLC, 2003 WL

22519456, at *1 (citing <u>Willemijn Houdstermaatchappij, B.V. v. Standard Microsystems Corp.</u>, 103 F.3d 9, 12 (2d Cir. 1997)).

Upon the denial of a motion for vacatur or modification, the Court must confirm an arbitration award.  <u>See</u> 9 U.S.C. § 9  ("[U]pon an application for an order to confirm an arbitration award, the court must do so unless the award is vacated, modified, or corrected under § 10 or § 11."); <u>Gottdiener</u>, 462 F.3d at 110 ("[T]he court must grant the award unless the award is vacated, modified, or corrected.").

Here, the arbitrator's careful analysis provides much more than "'a barely colorable justification for the outcome [he] reached,'" <u>see</u> <u>Gottdiener</u>, 462 F.3d at 110 (quoting <u>Landy Michaels Realty Corp.</u>, 954 F.2d at 797), and Rabin has failed to meet the "heavy burden of proof" necessary to avoid confirmation of the arbitral award.  <u>See</u> <u>Data-Stream AS/RS Techs., LLC</u>, 2003 WL 22519456, at *1.  Because Rabin's motion to modify the award has been denied, Silver is entitled to an order confirming the arbitral award.  <u>See</u> <u>Hall Street Assocs., L.L.C. v. Mattel, Inc.</u>, 552 U.S. 576, 582 (2008) ("Under the terms of [Section 9 of the Federal Arbitration Act], a court 'must' confirm an arbitration award 'unless' it is vacated, modified, or corrected as prescribed in [Sections] 10 and 11.") (alterations in original)).

## **CONCLUSION**

Rabin's application to modify the arbitration award is DENIED and Silver's petition to confirm the award is GRANTED. The Clerk of the Court shall enter judgment for the Respondent in the amount of $30,295.51. The Clerk of the Court is directed to terminate the motion (Docket No. 8) and to close this case.

Dated: New York, New York
      March 21, 2011

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge